United States Court of Appeals,

Fifth Circuit.

No. 92-5753.

Sandy Diana HIRRAS, Plaintiff-Appellant,

v.

NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a Amtrak, Defendant-Appellee.

Jan. 7, 1994.

Appeal from the United States District Court for the Western District of Texas.

Before POLITZ, Chief Judge, REAVLEY, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiff Sandy Diana Hirras brought this lawsuit against her employer, the National Railroad Passenger Corporation ("Amtrak"), alleging that Amtrak failed to provide her with a work environment free from gender-based discrimination. The district court dismissed Hirras's Title VII, 42 U.S.C. § 2000e *et seq.* (1988), state law intentional infliction of emotional distress, and negligent infliction of emotional distress claims. We affirm.

I

Hirras alleges that shortly after Amtrak hired her as a ticket clerk at its San Antonio station, she was verbally abused by co-workers, received abusive telephone calls and notes from anonymous sources, and was the subject of obscene graffiti spray-painted by an anonymous person onto a door at the station. Hirras further alleges that the harassment became so unbearable that she was forced to take a leave of absence from her job and is unable to return to work.

Amtrak, on the other hand, contends that the telephone calls resulted not from sexual harassment, but rather from the arrest of an Amtrak passenger in San Antonio who allegedly was transporting drugs aboard an Amtrak train.[1] Amtrak also argues that it did not tolerate a hostile work environment, but instead contacted four law enforcement agencies—the Federal Bureau of

---

[1] In support of this contention, Amtrak argues that other employees, both male and female, received threatening phone calls during approximately the same time period that Hirras was harassed.

Investigation and the Amtrak, Southern Pacific, and San Antonio Police Departments—to investigate the calls and notes that Hirras received. Unfortunately, however, the agencies were unable to determine the source of the calls and notes.

The district court granted Amtrak's motion to dismiss Hirras's state law claim for negligent infliction of emotional distress, finding that Texas does not recognize such a claim. The district court also held that Hirras's state law claim for intentional infliction of emotional distress was preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* Finally, the district court dismissed Hirras's Title VII claim without prejudice, holding that the claim was subject to the arbitration provisions of the RLA, 826 F.Supp. 1062.[2] Hirras now appeals all three aspects of the district court's judgment.[3]

## II

Hirras, relying on *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), initially contends that her Title VII claim is cognizable in federal court and is not governed by the mandatory arbitration provisions of the RLA. Amtrak, citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), argues that Hirras's Title VII claim is subject to the arbitration provisions of the RLA and, therefore, that the district court did not err in dismissing the claim for lack of subject matter jurisdiction.

In reviewing a Rule 12(b)(6) motion to dismiss, the facts alleged in the complaint are assumed correct. *Doe v. State of Louisiana,* 2 F.3d 1412, 1413 (5th Cir.1993). The complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Id.* at 1416.

---

[2]While an order dismissing a complaint "without prejudice" usually is not appealable because the plaintiff may file an amended complaint, the district court's order in this case is final and appealable because no amendment is possible. "Without prejudice" here simply meant without detriment to Hirras's ability to present the claims to an arbitrator. *See Farrand v. Lutheran Brotherhood,* 993 F.2d 1253, 1254 (7th Cir.1993).

[3]The Texas Supreme Court held, after the district court's ruling, that Texas does not recognize the tort of negligent infliction of emotional distress. *See Boyles v. Kerr,* 855 S.W.2d 593 (Tex.1993). Consequently, we affirm that portion of the district court's order dismissing Hirras's negligent infliction of emotional distress claim.

A

Section 3 of the RLA provides:

> The disputes between an employee ... and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions ... may be referred by petition of the parties or by either party to the appropriate division of the [National Railroad] Adjustment Board ["NRAB"] with a full statement of the facts and all supporting data bearing upon the disputes.

45 U.S.C. § 153 First (i). "Minor disputes" include those where "the [employee's] claim is founded upon some incident of the employment relationship, or asserted one, independent of those covered by the collective agreement, e.g., claims on account of personal injuries." *Elgin, J. & E. Ry. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945); *see also Morales v. Southern Pacific Transp. Co.,* 894 F.2d 743, 745 (5th Cir.1990) (stating that claims "which grow out of the employment relationship can constitute "minor disputes' under the Act, even when the claims do not arise directly from the collective bargaining agreement"). The NRAB's jurisdiction over minor disputes is exclusive.[4] *Andrews v. Louisville & N. Ry.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). "[I]f there is any doubt as to whether a dispute is major or minor a court will construe the dispute to be minor." *Railway Labor Executives Ass'n v. Norfolk & W. Ry.,* 833 F.2d 700, 705 (7th Cir.1987).

B

In *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the plaintiff, as required by his employer, registered as a securities representative with the New York Stock Exchange. Gilmer's registration application provided that he agreed to arbitrate any controversy arising out of the employment relationship or termination of his employment. After Interstate terminated his employment, Gilmer brought suit alleging that Interstate had discharged him because of his age, in violation of the Age Discrimination in Employment Act ("ADEA").[5] The

---

[4]Major disputes, on the other hand, involve those that relate to the formation of collective bargaining agreements or efforts to secure them. *Burley,* 325 U.S. at 723, 65 S.Ct. at 1290. The terms "major" and "minor" obviously do not describe the gravity of the dispute.

[5]29 U.S.C. § 621 *et seq.*

Supreme Court found that, pursuant to the Federal Arbitration Act ("FAA"),[6] Gilmer was required to arbitrate his ADEA claim:

> It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA.... "[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; [instead,] it only submits to their resolution in an arbitral, rather than judicial, forum."

500 U.S. at ----, 111 S.Ct. at 1652 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)).

The Court in *Gilmer* rejected several policy arguments against requiring arbitration of statutory discrimination claims. Gilmer first argued that because the Congress designed the ADEA to both address individual grievances and promote important social policies, compulsory arbitration of ADEA claims would be inconsistent with the purposes and statutory framework of the ADEA. The Court, however, did not find any inherent inconsistency between those policies and the arbitration of ADEA claims: " "[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent functions.' " 500 U.S. at ----, 111 S.Ct. at 1653 (quoting *Mitsubishi,* 473 U.S. at 637, 105 S.Ct. at 3359).

Gilmer next contended that compulsory arbitration was inappropriate because it would deprive claimants of the judicial forum provided for by the ADEA. "Congress, however, did not explicitly preclude arbitration or other non-judicial resolution of claims, even in its recent amendments to the ADEA." *Id.* at 1653-54. Moreover, the Court stated that Gilmer's contention ignored the ADEA's flexible approach to the resolution of claims, "which suggests that out-of-court dispute resolution, such as arbitration, is consistent with the statutory scheme established by Congress." *Id.* at 1654.

The Supreme Court in *Gilmer* also rejected as " "far out of step with our current strong

---

[6]9 U.S.C. § 1 *et seq.* The FAA provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

endorsement of the federal statutes favoring this method of resolving disputes,' " *id.* (citation omitted), a host of challenges raised by Gilmer to the adequacy of arbitration proceedings. First, the Court refused to presume that arbitrators will be biased in favor of the employer. *Id.* The Court then rejected the contention that the limited discovery allowed in arbitration would make it difficult to prove discrimination. *Id.* at 1654-55. The Court also found that " "although judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute' at issue." *Id.* at 1655 n. 4 (quoting *Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 232, 107 S.Ct. 2332, 2340, 96 L.Ed.2d 185 (1987)).

Shortly after the Supreme Court decided *Gilmer,* we held that a stockbroker's Title VII claim was subject to compulsory arbitration under the FAA:[7] "[W]e have little trouble concluding that Title VII claims can be subjected to compulsory arbitration. Any broad public policy arguments against such a conclusion were necessarily rejected by *Gilmer."  Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229, 230 (5th Cir.1991). Moreover, we found that *Gilmer* definitively rejected any argument against arbitration of discrimination claims that was based on a "mistrust of the arbitral process."[8] *Id.*

C

Turning now to the question whether Hirras's Title VII claim is subject to the RLA's arbitration provisions, we find that *Gilmer* and *Alford* compel the conclusion that Hirras's claim is subject to the arbitration provisions of the RLA.[9] The Supreme Court in *Gilmer* and this Court in

---

[7]The stockbroker had signed a securities registration application containing an arbitration provision similar to the one at issue in *Gilmer.*

[8]*See also Felt v. Atchison, T. & S.F. Ry.,* 831 F.Supp. 780 (C.D.Cal.1993) (finding that a religious discrimination claim brought under Title VII was subject to the compulsory arbitration provisions of the RLA); *Newton v. Southern Pacific Transp. Co.,* 1992 WL 350245 (W.D.Tex. Sept. 8, 1992) (holding that a Title VII claim was subject to the compulsory arbitration provisions of the RLA).

[9]Although the parties occasionally have stated the issue as whether the RLA "preempts" Title VII, preemption is not the issue here. *See Britt v. Grocers Supply Co.,* 978 F.2d 1441, 1447 (5th Cir.1992) (noting that "traditional preemption analysis does not apply in a conflict between two federal statutes"), *cert. denied,* --- U.S. ----, 113 S.Ct. 2929, 124 L.Ed.2d 679 (1993); *see also Watt v. Alaska,* 451 U.S. 259, 266-67, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981). Instead, we must determine how the interests underlying Title VII and the RLA can best be accommodated.

*Alford* determined that there exist no federal or congressional policies prohibiting the submission of discrimination claims to arbitration. Indeed, § 118 of the 1991 Civil Rights Act encourages the use of "alternative means of dispute resolution," including arbitration, to resolve disputes arising under Title VII. *See* 42 U.S.C.A. § 2000e note (West Supp.1993). Moreover, the facts alleged by Hirras demonstrate that her claim is founded upon an incident of the employment relationship between her and Amtrak, thus making her claim a minor dispute under the RLA and subject to the exclusive jurisdiction of the NRAB. Because "Congress considered it essential to keep ... "minor' disputes within the [NRAB] and out of the courts," *Union P.R.R. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam), we believe that the interests of the RLA and Title VII are best served by requiring Hirras to arbitrate her Title VII claim under the procedures established by the RLA.

Hirras raises several arguments against requiring arbitration of her Title VII claim, all of which we find to be without merit. Hirras initially contends that *Gilmer* and *Alford* are factually distinguishable from this case, and thus should not control the outcome, because: (1) she did not waive her right to pursue statutory claims of discrimination in federal court by signing an arbitration agreement, as did the plaintiffs in *Gilmer* and *Alford;* (2) although the collective bargaining agreement between Amtrak and the Transportation Communications International Union, which represents Amtrak's employees, contains a provision prohibiting discrimination on the basis of race, color, religion, sex, national origin, or ancestry, the union cannot waive her right to bring a Title VII action in federal court; and (3) that the decisions in *Gilmer* and *Alford* rested upon pro-arbitration policy reflected in the FAA, while this case is not governed by the FAA.[10] Initially, we note that the duty to arbitrate here arises not from any agreement between the parties, but rather from the RLA itself. Moreover, because the specific statutory basis for arbitration of disputes between a railroad and its employees under the RLA is more compelling than the FAA's general applicability to the agreements at issue in *Gilmer* and *Alford,* the basis for concluding that Hirras's Title VII claim is

---

[10]*See* 9 U.S.C. § 1 (stating that the FAA does not "apply to contracts of employment of ... railroad employees").

subject to the RLA's arbitration procedures is stronger here.

Hirras next argues that the outcome of this case is controlled not by *Gilmer* and *Alford,* but rather by *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), and its progeny.[11]  The Supreme Court in *Gilmer,* however, pointed out four distinctions between those cases and *Gilmer.*  First, the *Gardner-Denver* line of cases involved the issue whether arbitration of *contract-based* claims precluded subsequent judicial resolution of *statutory* claims, not the enforceability of an agreement to arbitrate statutory claims.  Second, the labor arbitrators in those cases had limited authority under the applicable collective bargaining agreements and were not authorized by the employees to decide the statutory claims,[12] while Gilmer had agreed to arbitrate his discrimination claim.  Third, because the employees were represented by their unions in the arbitration proceedings, an "important concern" in the *Gardner-Denver* line of cases was the tension between collective representation and individual statutory rights.  Finally, those cases were not decided under the FAA, which reflects a liberal federal policy favoring arbitration agreements.  *Gilmer,* 500 U.S. at ----, 111 S.Ct. at 1657.

We believe that the same four distinctions apply here.  The *Gardner-Denver* line of cases is not controlling because:  (1) they did not involve the issue whether the RLA mandates arbitration of a railroad employee's Title VII claim that arises out of the working conditions provided by the railroad;  (2) "there is no statutory barrier to submitting [to the NRAB] questions involving the interpretation of statutes or case law," *Richmond, F & P. R.R. v. Transportation Communications Int'l Union,* 973 F.2d 276, 279 (4th Cir.1992);  (3) the RLA guarantees Hirras the right to present her claim, either with or without union involvement, to the NRAB;[13] and (4) the RLA, like the FAA, reflects a liberal federal policy favoring arbitration.  Moreover, RLA arbitrators are just as competent

---

[11]*See Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981);  and *McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984).

[12]In *Gardner-Denver,* the Court noted that a labor arbitrator has authority only to resolve questions of contractual rights and does not have the "general authority to invoke public laws that conflict with the bargain between the parties."  415 U.S. at 53-54, 94 S.Ct. at 1022-23.

[13]*See* 45 U.S.C. § 153 First (j);  *Burley,* 325 U.S. at 736-38, 65 S.Ct. at 1296-97.

as the New York Stock Exchange arbitrators in *Gilmer* and *Alford* to resolve statutory claims of discrimination. Accordingly, we find that this case more closely resembles the situation presented in *Gilmer* and, therefore, is governed by *Gilmer* rather than *Gardner-Denver*.

Hirras further relies on the Supreme Court's opinion in *Atchison, T. & S.F. Ry. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), where the Court addressed the issue whether the possibility of pursuing a labor grievance under the RLA deprived an employee of the right to seek damages under the Federal Employers Liability Act ("FELA")[14] for personal injuries suffered as a result of the negligence of a fellow employee or the employer railroad. The Court, rejecting the railroad's argument that FELA damages were unavailable if the injury was caused by a condition that could have been the subject of a grievance under the RLA, held that FELA claims did not have to be submitted to the NRAB pursuant to the RLA's arbitration procedures. *Id.* at 564, 566-67, 107 S.Ct. at 1415, 1416. *Buell,* however, is distinguishable from the present case for two reasons. First, "Congress enacted the FELA to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees." *Id.* at 561, 107 S.Ct. at 1413. Thus, the railroad's argument that a FELA action was barred whenever the employee's injury was caused by conduct subject to RLA arbitration ignored the purpose behind the FELA. Here, Amtrak does not argue that Hirras is barred from recovering Title VII damages, but rather that her claim for damages may be pressed only before the NRAB. Second, Title VII, unlike the FELA, encourages parties to resolve employment discrimination disputes through arbitration. *See* 42 U.S.C. § 2000e note (West Supp.1993). Accordingly, *Buell* is inapposite.

Finally, Hirras relies on *Bates v. Long Island R.R.,* 997 F.2d 1028, 1034 (2d Cir.), *cert.*

---

[14]45 U.S.C. § 51 *et seq.* FELA specifically applies to railroads:

> Every common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier in commerce ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, tract, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

*denied,* --- U.S. ----, 114 S.Ct. 550, --- L.Ed.2d ---- (1993), where the Second Circuit held that claims under the Rehabilitation Act of 1973[15] are not required to be arbitrated under the RLA, even though the claims "may implicate ... portions of [the relevant] collective bargaining agreement."  The Second Circuit, distinguishing *Gilmer* as case decided under the FAA, stated that "there are certain instances when arbitration is inadequate to protect an employee's rights....  When an employee's civil rights have been violated, arbitration should not be the sole avenue of protection, unless Congress so specified."  *Id.* (citing *Barrentine,* 450 U.S. at 734, 101 S.Ct. at 1442).  In concluding that Rehabilitation Act claims need not be submitted to arbitration, the court also relied on the anti-arbitration policies articulated in *Gardner-Denver* line of cases.[16]  However, as the Supreme Court has already rejected the *Gardner-Denver* anti-arbitration public policy arguments, we feel the Second Circuit erred in *Bates* in relying on them.  Moreover, we find that Congress has specified in the RLA that statutory claims of discrimination arising out of the working conditions provided by employer are subject to the RLA's arbitration procedures.  Accordingly, we do not find *Bates* persuasive authority for the proposition that Hirras's Title VII claim need not be submitted to arbitration.[17]

---

[15]29 U.S.C. § 794.

[16]The Second Circuit stated that barriers to arbitration of such claims include:  (1) arbitrators resolve disputes according to the terms of the applicable collective bargaining agreement, not federal law, and (2) the fact-finding process in arbitration generally is not equivalent to judicial fact-finding because the Federal Rules of Evidence do not apply and little discovery occurs.  997 F.2d at 1035.

[17]Hirras relies on several other cases, all of which we find to be inapposite.  For example, in *Britt,* 978 F.2d 1441, the employer contended that the National Labor Relations Act preempted ADEA claims.  In *McAlester v. United Air Lines, Inc.,* 851 F.2d 1249, 1253 (10th Cir.1988), the defendant airline argued that the RLA preempted the employee's right to recover damages pursuant to 42 U.S.C. § 1981.  As noted above, Amtrak does not argue that the RLA preempts Title VII or bars Hirras from recovering Title VII damages.  In *Claps v. Moliterno Stone Sales, Inc.,* 819 F.Supp. 141 (D.Conn.1993), the district court, based on the policy arguments articulated in *Gardner-Denver* against arbitration of statutory claims, rejected the employer's argument that it was entitled to summary judgment on the plaintiff's Title VII claims because the plaintiff had not exhausted the grievance procedures available under the RLA.  Because we have already held that the Supreme Court in *Gilmer* rejected any broad public policy arguments against requiring Title VII claims to be arbitrated, *see Alford,* 939 F.2d at 230, we do not find *Claps* persuasive.  *See also Rodriguez de Quijas v. Shearson/American Express Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (requiring arbitration of claim arising under the Securities Act of 1933);  *Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96

III

State law claims that involve minor disputes are preempted by the RLA. *Morales,* 894 F.2d at 746. A state law claim involves a minor dispute when the claim is " "inextricably intertwined' with the terms and conditions of employment under the collective bargaining agreement"—that is, when the court must interpret the terms and conditions of the agreement to properly resolve the claim. *Id.* at 745. Thus, state law claims that "grow out of the employment relationship can constitute "minor disputes' under the [RLA], even when the claims do not arise directly from the collective bargaining agreement itself." *Id.*

We find that Hirras's intentional infliction of emotional distress claim grew out of the employment relationship and therefore is inextricably intertwined with the terms and conditions of her employment.[18] *See Calvert v. Trans World Airlines, Inc.,* 959 F.2d 698 (8th Cir.1992) (concluding that the RLA preempted an intentional infliction of emotional distress claim). To properly adjudicate Hirras's claim, the district court would have to construe the collective bargaining agreement to determine what actions Amtrak was required to take in response to Hirras's complaints that she was being harassed. *See Beard v. Carrollton R.R.,* 893 F.2d 117, 122 (6th Cir.1989). Moreover, if Hirras was successful on her claim, "the district court would have to determine [Hirras's] substantive rights under the collective bargaining agreements in order to fashion an appropriate remedy."[19] *Morales,* 894 F.2d at 746. Accordingly, we conclude that the district court properly dismissed the intentional infliction claim for lack of subject matter jurisdiction because the claim is

L.Ed.2d 185 (1987) (requiring arbitration of claims arising under the Securities Exchange Act of 1934 and the civil provisions of RICO); *Mitsubishi Motors,* 473 U.S. 614, 105 S.Ct. 3346 (requiring arbitration of claim arising under the Sherman Act).

[18]Hirras alleges that a co-worker harassed her; that Amtrak supervisors tolerated the harassment and did nothing to stop it; that Amtrak "maintain[ed] a policy, practice, custom or usage of discriminating against [her] because of her sex ... with respect to compensation, terms, conditions and privileges of employment and in wages that deprive[d her] of equal employment opportunities"; and that the harassment "became so unbearable that [she] was forced to take a leave of absence ... [and] is unable to return to work."

[19]As the district court correctly found, Hirras's claim and desired remedies implicate provisions in the collective bargaining agreement relating to "promotion, assignments and displacements, seniority, sick leave, leave of absence, return from leave of absence or temporary assignment, and fitness for duty physical examinations."

preempted by the RLA.

IV

For the foregoing reasons, we AFFIRM the judgment of the district court.