**Eva Lois HENRY, Plaintiff,**

v.

**COLONIAL BAKING COMPANY OF DOTHAN, et al., Defendants.**

**Civil Action No. 95–D–1621–S.**

United States District Court,
M.D. Alabama,
Southern Division.

Aug. 30, 1996.

Benjamin E. Meredith, Dothan, AL, for plaintiff.

Leslie Allen, David Boyd, Montgomery, AL, John J. Coleman, Birmingham, AL, for defendants.

### MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is defendants Colonial Baking Company, Campbell Taggart, Inc., and Anheuser Busch Companies' (referred to collectively as "Colonial Baking") motion filed June 3, 1996, for summary judgment. The plaintiff Eva Lois Henry ("Henry") respond- ed in opposition on June 26, 1996. On July 8, 1996, Colonial Baking replied to Henry's response and moved to strike the affidavits submitted in support of Henry's response. On July 17, 1996, Henry responded to Colonial Baking's motion to strike and filed a surrebuttal to Colonial Baking's motion for summary judgment. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that Colonial Baking's motion for summary judgment is due to be granted.

### STATEMENT OF FACTS

Plaintiff Eva Lois Henry ("Henry") was employed by Colonial Baking in Dothan, Alabama as a retail store clerk for a number of years. In her Title VII action, Henry contends that she was discriminated against on the basis of her gender when the defendants selected a male rather than a female for a management position three months prior to the date Henry was notified that her sales clerk position was being eliminated. With respect to her state law breach of contract claim, Henry alleges that Colonial Baking breached an oral promise that she would at some future date be given a full-time job. Colonial Baking denies the allegations of sex discrimination and breach of contract and moves the Court to enter summary judgment in its favor.

Henry was hired by Colonial Baking in May 1987. From May 1987 until May 31, 1994, Henry was employed as a retail store clerk in a Colonial Baking retail bakery store in Dothan, Alabama. Henry's Dep. at 38–39. On or about May 24, 1994, Henry was advised that due to a reorganization and reduction-in-force, her position as retail store clerk was being eliminated and she was being laid off effective May 31, 1994. Henry's Dep. at 176–77.[1] Henry was offered a part-time retail store clerk position in Valdosta, Georgia, which she subsequently rejected. Henry's Dep. at 177–78. Henry was then offered a part-time position inside the bakery, which she accepted. Positions inside the bakery are covered by a collective bargaining agreement between Colonial Baking and the Retail, Wholesale and Department Store Union, AFL–CIO. Henry's Dep. at 180. When Henry transferred inside the bakery her salary increased from $8.30 per hour to $9.35 per hour, and although Henry was classified as a part-time employee, she continued to

---

1. Henry was not the only store clerk in the Dothan division laid off as a result of the reduction-in-force. Retail store clerks in other divisions were also laid off and some were reduced from full to part-time employment. Russell's Aff.

work in excess of 40 hours per week. Henry's Dep. at 119. Henry is still employed by the bakery but has been on leave of absence for more than one year. Hall's Aff.

In her complaint, Henry alleges that she was discharged in 1994 so that Colonial Baking could "give a position to a male" and that, subsequent to her transfer to a position inside the bakery, she was denied certain positions or job-related benefits. When asked on deposition to explain the basis for her discrimination claim, Henry testified as follows:

A. My discrimination based on my gender is [that] there was a man put in the discount job which I had the job and I knew how to do it better than he did.

    \*    \*    \*    \*    \*    \*

Q. Is your gender discrimination limited to the fact that you contend that a male replaced you in retail about the same time that you went into or inside the plant?

A. Yes, it is.

Q. Okay, Is there anything else that you contend was discriminatory based on your gender?

A. No.

Q. ... Who is this individual that you contend replaced you?

A. Charles Lamb.

Q. ... Do you contend that he in fact replaced you?

A. He was put over the discount stores.

Q. And when was he put over the discount stores?

A. I think it was sometime in April about two months before I was laid off.

Q. What position had Mr. Lamb held prior to being placed over the discount store?

A. As far as I know he was a supervisor.

Henry's Dep. at 85–86.

Q. Your complaint says after discharging plaintiff to give a position to a male employee in May '94. Are you referring to Charles Lamb there?

A. Yes, I am.

Q. Is it your contention that you were terminated so that Charles Lamb could have a job?

A. If I knew ahead of time that I was not gonna have a job, I could have done that job.

Q. And again, I'm just trying to understand what is written here, because this implies that—

A. A woman could have done this job as good as he could have.

Q. But you were not discharged prior to the time that Charles Lamb was selected for that position were you?

A. I was discharged later.

Q. Okay. So is the first clause of that sentence incorrect? ...

A. He was employed around April or March of that year. If I knew—I could have done that job. A female could have done his job.

Q. But my question is you were not in the position that Charles Lamb was selected for, were you?

A. No, I was not in that position.

Q. And has anyone ever been hired to the position that you held in the retail stores prior to being laid off?

A. There have been several manpower people that comes in there and works part time to pull vacations.

Henry's Dep. at 169–70; *see also* Henry's Dep. at 189–92 (gender discrimination claims deals solely with selection of Charles Lamb).

In late 1993 and early 1994, several management employees of Colonial Baking accepted an early retirement package. One of the employees retiring was Thomas Pitts, who at that time was the Supervisor of Retail Stores. Lamb's Dep. at 64, 69; Hall's Aff. In February 1994, Virgil Russell, Zone Manager for the geographic zone including Dothan, began interviewing various employees to fill this vacancy. Mr. Russell was seeking someone with several years experience as a supervisor, preferably someone who had

been supervising more than one store or a territory.[2]  Russell's Aff.

Mr. Russell first interviewed Sybil Phillips and Earl Henderson.  Ms. Phillips was the manager of the retail bakery store in Dothan at which Henry was employed.  Hall's Aff.  Mr. Henderson worked at the commissary.[3]  After speaking with each of these persons, Mr. Russell approached Charles Lamb ("Lamb") about the position.  Russell's Aff.

When Lamb was interviewed, he had served as supervisor of route sales for sixteen years.  In this position, Mr. Lamb supervised an average of six route salespersons, each of whom delivered bakery products to approximately twenty-five stores on established routes throughout the tri-state area.  Hall's Aff.  Of the candidates interviewed, Lamb was the only one with experience supervising more than one store or a territory.  Mr. Russell selected Lamb because he considered Lamb to be the most qualified candidate for the job.  Russell's Aff.  Mr. Lamb began serving as Supervisor of Retail Stores on February 23, 1994.  Lamb's Dep. at 63.[4]  Henry did *not* apply for the position of Supervisor of Retail Stores.  Henry's Dep. at 91.  Henry contends that the vacancy was never published and that Mr. Lamb was not qualified for the position.  See Henry's Aff.

With respect to her breach of contract claim, Henry alleges that "defendants' agents promised her that[,] if she would take part time work[,] she would be reinstated to full time employment."  Pl.'s Compl. at 2.  On or about May 24, 1994, Henry was told that Colonial Baking was eliminating two retail store clerk positions in the Dothan area.  Henry and Artelma Wright ("Wright"), the least two senior store clerks, were laid off.  Henry's Dep. at 176–77.  Both Wright and Henry were offered and rejected part-time sales clerk positions in Valdosta, Georgia.  Henry's Dep. at 177–80.[5]  Within a couple of days, Colonial Baking offered Wright and Henry part-time positions inside the bakery.[6]  These positions were covered by a collective bargaining agreement.  At the time these positions were offered, Colonial Baking told Wright and Henry that they would retain their seniority for positions in the retail stores and for vacation purposes, but pursuant to the union contract they would have a new seniority date for positions inside the bakery.[7]  In other words, Henry's original hire date (May 11, 1987) would be used with respect to a position in the retail stores and vacation leave but not for positions covered by the collective bargaining agreement.  Henry's seniority date for bidding on jobs inside the bakery was June 1, 1994, the date she began working in a position covered by the collective bargaining agreement.  Henry's Dep. at 186.

Prior to accepting this position, Henry called the unemployment office and was told that, if she "did not accept that job, [she] would not be able to draw unemployment."  Henry's Dep. at 180.  Henry accepted the position and began working inside the bakery as a utility person.  In this position, Henry was assigned various jobs.  She worked on

---

2.  The Supervisor of Retail Stores has oversight responsibility for the overall operation of the bakery stores within his or her division.  Russell's Aff.  The responsibilities include: hiring, training, and supervising bakery store personnel; controlling weekly cost and recovery figures; supervising merchandising and product rotation; ensuring accurate accounting; and supervising product distribution.

3.  As a commissary worker, Mr. Henderson loaded bakery products onto route trucks and delivered bakery goods to be sold at the two retail bakery stores in Dothan.  Hall's Aff.

4.  Lamb testified on deposition that he began serving in this position on February 28, 1994.  Payroll records indicate that the effective date of his transfer was February 23, 1994.  Hall's Aff.

5.  Ms. Wright had more seniority than Henry so she was offered the position prior to Henry.  Hall's Aff.

6.  Ms. Wright subsequently bid on and was awarded a full-time position inside the bakery.  Henry's Dep. at 122.  Like Henry, Wright's seniority date for jobs inside the plant was June 1, 1994.  Hall's Aff.

7.  Colonial Baking's vacation policy is graduated so that employees with longer service receive additional vacation leave.  Seniority may affect the date(s) on which an employee may take vacation leave.  Henry's Dep. at 128; Answer, Attachment B at Article 15 pp. 10–11, (Collective Bargaining Agreement).

the bun line for several months and in the sanitation department for several weeks before being offered a full-time position in the sanitation department. Henry worked in this position briefly before returning to the utility department because, under the collective bargaining agreement, the maximum salary she could receive working in the sanitation department ($8.80) was less than the salary she had been earning as a utility helper ($9.55). Henry's Dep. at 113, 119–20; Hall's Aff. As Henry testified on deposition, the other full-time jobs on which she bid were filled by someone with more seniority:

> I don't know of any job I should have been given because there were several jobs that come open. And since my seniority was 6/1/94, any time I bidded on a job with that seniority, I was always out bid[ ], so I did not get the job. I bid[ ] on every job I thought I could do. But since my seniority was 6/1 of '94 instead of 5/7/87, I did not get those jobs.

Henry's Dep. at 186.

The collective bargaining agreement contains a grievance procedure providing for final and binding arbitration. Answer, Attachment B at Article 12, p. 7. Henry testified on deposition that she frequently spoke with the union stewards and business representatives about her employment and the alleged problems she was having on the job. Henry's Dep. at 123–32. However, Henry *never* filed a grievance or asked that one be filed on her behalf. Henry's Dep. at 129–30.

According to Henry's deposition testimony, the only non-union position Henry sought was a computer data entry position in the bakery office. Henry was interviewed for this position in October 1994. Generally the starting salary for this position was $5.50 per hour, significantly less than Henry was paid as a part-time utility helper. Henry was not selected for this position because she lacked the necessary experience and knowledge for the position. Henry's Dep. at 194–95; Hall's Aff. In late November or early December 1995, Henry was recalled to the position of

commissary worker, a full-time position. Def.'s Exh. 2 to Henry Dep. Henry rejected this offer claiming that she could not perform the job due to her alleged medical condition.[8] Henry's Dep. at 171.

On July 25, 1995, more than one year after Henry's position was eliminated, Henry, through counsel, submitted to the Equal Employment Opportunity Commission ("EEOC") an unsigned and undated two-page statement attached to an undated charge of discrimination. Exhs. 9, 10 to Henry's Dep. Henry claims that her prior lawyer, Jack Smith, contacted the EEOC sometime in November 1994. Henry's Dep. at 76–77; Def.'s Exh. 12 to Henry's Dep.

Neither Henry nor her counsel have any record of the alleged November 1994 communication with the EEOC and the charge filed on July 25, 1995, in no way references the alleged prior communication.[9] When Henry questioned the EEOC about this alleged prior communication, the EEOC responded as follows:

> You state that you mailed similar correspondence to our Birmingham District Office in November 1994, and someone in that office advised you that the letter was received, but had been lost. In response to your letter, staff in our Birmingham District Office have conducted a search of the mail records; however, they uncovered **no evidence that correspondence was received from you between September 29, 1994, through January 31, 1995.**

Exh. 13 to Henry's Dep. (emphasis added).

On September 20, 1995, the EEOC issued a Dismissal and Notice of Rights letter to Henry dismissing Henry's claims because

> The facts you allege fail to state a claim under any of the statutes enforced by the Commission. . . .
>
> Your charge was not timely filed with the Commission, *i.e.*, you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by

---

**8.** At the time Henry was offered this position, she claimed that she was unable to work due to alleged bilateral carpal tunnel syndrome. Hall's Aff.

**9.** Henry claims that Mr. Smith's office has been searched several times. Henry's Dep. at 153.

law, the Commission cannot investigate your allegations.

(Ex. 14 to Henry dep.). Henry filed the complaint in this action on December 19, 1995.

## *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court has noted, on the other hand, that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989). At the summary judgment stage, the court must construe the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553 (citing Fed.R.Civ.P. 56(c)).

## *DISCUSSION*

### I. TITLE VII CLAIMS ARISING PRIOR TO MAY 24, 1994.

To have a viable action under Title VII, Henry was required to file a timely EEOC charge asserting her discrimination claim within 180 days from the time the alleged discriminatory act occurred. *See* 42 U.S.C. § 2000e–5(f). A charge is filed on the date it is received by the EEOC. *Taylor v. General Telephone Co. of Southwest*, 759 F.2d 437, 441–42 (5th Cir.1985). Henry's claim was received on July 25, 1995, more than thirteen months after Henry's retail store clerk position was eliminated and more than sixteen months after Henry learned that Lamb had been selected to serve as Supervisor of Retail Stores.

Henry contends that her prior lawyer told her that he had contacted the EEOC sometime in November, 1994. The court finds that Henry's statement, even though made under oath, constitutes hearsay and does not fall within any of the hearsay exceptions. *See* Fed.R.Evid. 801. That is, Henry is attempting to admit her lawyer's statement as substantive evidence that she contacted the EEOC regarding her discrimination claims and then is, in essence, requesting the court to equate this alleged contact with the filing of an EEOC charge.

The Eleventh Circuit has stated that, in some circumstances, "otherwise admissible evidence [may] be submitted in inadmissible form at the summary judgment state, though at trial it must be submitted in admissible form." *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir.1996). However, the Eleventh Circuit emphasized that the nonmoving party must satisfy the court that he or she would be able to proffer admissible evidence at trial. On the other hand, "... a suggestion

that admissible evidence might be found in the future is not enough to defendant a motion for summary judgment." *Id.*

■ Here, the court finds that Henry's statement regarding her lawyer's alleged contact falls within the latter category. At the pretrial conference held on July 31, 1996, the court inquired about whether Henry had offered any admissible evidence to refute the defendants' argument that the EEOC charge was untimely filed. Henry's counsel indicated that there was none in the record but that he might be able to produce a paralegal at trial who would testify that he had spoken to the EEOC in November 1994. Under *McMillian,* the mere possibility that the hearsay statement will be presented in the form of admissible evidence at trial does not warrant consideration of the hearsay evidence at the summary judgment stage.

■ As Henry repeatedly testified on deposition, the sole basis for her discrimination claim was the selection of Lamb for the position of Supervisor of Retail Stores. There can be no question that the 180–day period began to run no later than February 23, 1994, the date Lamb began serving as Supervisor of Retail Stores. Henry's Dep. at 92. Thus, even if Henry's statement regarding her lawyer's alleged contact in November 1994 with the EEOC were admissible, the 180–day deadline passed on August 22, 1994. This is at least two months prior to the alleged November 1994 contact of which neither Henry, Henry's counsel (past or present), nor the EEOC has any record. The charge of discrimination underlying this complaint was not filed until July 25, 1995, more than 517 days after the alleged discriminatory act and 337 days after the deadline for filing a charge.[10]

Moreover, the court finds that Henry can make no case for equitable tolling of the 180–day period. In *Freeman v. CSX Transportation Co.,* 730 F.Supp. 1084, 1086–87 (M.D.Ala.1989), this court explained the equitable tolling concept:

As a general rule, "equitable tolling may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." (citations omitted).

*Id.* at 1086. Henry has failed to offer a plausible explanation as to why she should be excused from the consequences of filing her EEOC charge late, much less an explanation sufficient to invoke equitable tolling. This is especially true because Henry was represented by legal counsel in connection with filing her EEOC charge. This court found in *Freeman* that the plaintiff, who was represented by counsel, had constructive knowledge of the procedure for filing an EEOC charge. Thus, the court found that the plaintiff's charge, which was filed with the wrong agency, was untimely. *Id.* at 1087.

Based on the foregoing, the court finds that Colonial Baking's motion for summary judgment as to Henry's claims under Title VII is due to be granted because she failed to timely file her EEOC charge. Furthermore, the court finds that the defendants' motion to strike is due to be denied as moot because the court need not address the merits of Henry's Title VII claims, which are based on alleged discrimination occurring prior to May 24, 1996.

## II. CLAIMS ARISING SUBSEQUENT TO MAY 24, 1994.

■ From May 1987 until May 31, 1994, Henry worked for Colonial Baking, as a retail sales clerk, a position that was not covered by a collective bargaining agreement. On or about May 24, 1994, Henry was informed that her position was being eliminated effective May 31, 1994. Henry was offered a part-time position working inside the bakery. However, she was told, on or about May 26, 1994, that "if a full time job came

10. Even if the court found, based on *Sturniolo v. Sheaffer, Eaton, Inc.,* 15 F.3d 1023 (11th Cir. 1994), that the 180–day period did not begin to run until May 24, 1994, the date Henry learned that her retail store clerk position was being eliminated, the charge would still be untimely because it was filed more than 427 days after the alleged discriminatory act and 247 days after the deadline for filing a charge based on the May 24, 1994 date.

open we [11] would get it, **but it had to be posted on the board [and,] because of the union[,] the one with the most seniority would get it."** (excerpt from Henry notes). On June 1, 1994, Henry began working in a position that was covered by a collective bargaining agreement.

The collective bargaining agreement provided as follows:

### ARTICLE 5.

### Non–Discrimination

The Company and the Union agree not to discriminate against any individual with respect to compensation or terms and conditions of employment because of such individual's race, color, religion, **sex,** age or national origin, nor will they limit, segregate or classify employees in any way to deprive any individual employment opportunity because of race, color, religion, **sex,** age or national origin, nor shall an employee be discriminated against because of Union membership or non-membership.

\*　　\*　　\*　　\*　　\*　　\*

### ARTICLE 12.

### Grievance Procedure

*Section 1.* ... should a dispute arise between an employee and the Company as to the application and interpretation of the provisions of this Agreement, it shall constitute a grievance within the meaning of this Agreement.

*Section 4.* In the event the dispute cannot be satisfactorily settled within ten (10) days after the matter has been brought up, then either party may petition the Director of the Federal Mediation and Conciliation Service in Washington, DC, for a panel of at least five (5) names of arbitrators. In order to select an arbitrator from the panel furnished by the Federal Mediation and Conciliation Service, the Employer and the Union shall alternately strike names from the list until one (1) name remains. This person whose name survives will serve as the arbitrator. While the procedure is being pursued, the parties shall make every effort to settle the dispute or to select an impartial arbitrator by mutual consent, and in event such efforts are unsuccessful, the arbitrator shall be selected by the process as indicated above.

The decision of the arbitrator shall be final and binding, and shall be rendered as soon as possible. The salary and expenses of the arbitrator shall be shared equally by the Employer and the Union. The arbitrator shall render his decision within thirty (30) days of the conclusion of the arbitrator's hearing or in the event the arbitrator requests briefs, then within thirty (30) days of the receipt of the last brief filed.

There shall be no stoppage of work by the Union or its members or lockout by the Employer pending the hearing and determination of any dispute and the decision reached at any stage of the proceedings as herein provided shall be final and binding on both parties and shall not be subject to reopening except by mutual agreement.

*Section 5.* Whenever a grievance is not appealed to the next step, it shall be deemed resolved with no further appeal.

Collective Bargaining Agreement at 7–9, attached to Def.s' Answer.

It is undisputed that Henry never filed a grievance, and, thus, never exhausted the grievance procedure. Henry Dep. at 129–30. Thus the court finds, to the extent, if any, Henry claims that subsequent to May 24, 1994, she was discriminated against on the basis of sex or denied certain rights or benefits, such claims are due to be dismissed. In this regard, recent case law makes it clear that Henry cannot frustrate the purpose of the grievance procedure nor circumvent its terms by bringing such claims in federal court. Inasmuch as her entitlement to bring such an action in this court is confined to a review of the arbitrator's decision on her grievance, her current action is premature and must be dismissed.

In *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114

---

**11.** The "we" Henry referred to was she and Artema Wright, another retail sales clerk displaced by the reduction in force.

L.Ed.2d 26 (1991), the Supreme Court, in the context of an age discrimination claim, held that the arbitration process was appropriate as the sole and exclusive remedy for discrimination claims where the parties to the claim have agreed to arbitrate. In *Bender v. A.G. Edwards & Sons*, 971 F.2d 698 (11th Cir. 1992), the Eleventh Circuit made it clear that *Gilmer* applies to Title VII claims. Moreover, the Fifth Circuit in *Hirras v. National Railroad Passenger Corporation*, 10 F.3d 1142 (5th Cir.1994), extended this rationale to a Title VII claim that, like Henry's Title VII claim, is subject to collective bargaining agreement grievance and arbitration procedures culminating in final and binding arbitration.[12] 10 F.3d at 1147.

In *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir.1996), the court held that a collective bargaining agreement that expressly provided a mandatory grievance and arbitration procedure for dis-

crimination claims against an employer was an employee's *exclusive remedy* for claims arising under either the American Disabilities Act or Title VII.[13] "Thus, an employee cannot sue an employer without first going through the grievance procedure, and this is what [the plaintiff] is attempting to do." *Austin*, at 885. Here also, Henry is attempting to circumvent the arbitration process. Just as the plaintiff in *Austin* was not allowed to bypass the grievance and arbitration procedure of the collective bargaining agreement covering her, Henry likewise must not be allowed to circumvent the grievance and arbitration procedure of the collective bargaining agreement covering her. These authorities compel the conclusion that Henry's sole and exclusive remedy is the collective bargaining agreement's grievance and arbitration procedure to which she has voluntarily submitted her claims.

**12.** The Supreme Court's recent summary decision vacating *Hirras* in light of the Court's decision regarding state claim preemption in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (state law claims not requiring interpretation of a collective bargaining agreement were not preempted), is concerned with the Fifth Circuit's decision that *state law* claims were preempted by the grievance and arbitration procedure, see 10 F.3d at 1149 (state law outrage claim was preempted), not the Fifth Circuit's decision relevant to Henry's case—that *federal* claims must be arbitrated. The rights and obligations of which Henry complains—a full-time position and seniority—require interpretation of the collective bargaining agreement. Thus, her state law claim must be dismissed because it is preempted by federal labor law and Henry failed to exhaust the grievance procedure through arbitration. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

**13.** The *Austin* court decided several issues relevant to the present controversy. Austin filed Title VII and ADA claims against her former employer. The district judge granted summary judgment in favor of the employer based on the grievance/arbitration procedure set out in the collective bargaining agreement and Austin's failure to follow that procedure. *Austin*, at 878. The Court of Appeals did not question the propriety of deciding the matter on motion for summary judgment, indeed, the court affirmed.

The court began its opinion by rejecting Austin's argument that the collective bargaining agreement no longer applied to her because she

had been terminated, following *Nolde Bros, Inc. v. Local No. 358, Bakery and Confectionery Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977) *Id.* The court next determined that the language of the "Grievance" and "Arbitration" articles of the agreement, highly similar to the language used here, made arbitration mandatory rather than permissive. The presence of the word "May" as in "May be referred to arbitration," meant only that the claim "may be abandoned" or "may be referred to arbitration," not that a civil suit was an alternative. *Id.* at 879.

After noting the "well-recognized policy of federal law favoring arbitration of labor disputes" and setting forth the agreement provisions dealing with grievances and arbitration, the court, relying on the Supreme Court's opinion in *Gilmer*, held that collective bargaining agreements to arbitrate claims under the ADA or Title VII are enforceable. *Id.* at 879–81. The court noted that both the ADA and Title VII contain express provisions establishing a preference for arbitration and that the legislative history of both acts indicated a Congressional preference for arbitration. *Id.* at 881–82. The court also found that enforcing agreements to arbitrate did not conflict with the underlying purposes of the ADA or Title VII. *Id.* at 882.

The court concluded by noting that every other court to address these issues after the 1991 amendments to the Civil Rights found the arbitration provisions in question to be enforceable. The court found no reason to distinguish between arbitration provisions in individual employment contracts and those collectively bargained for as in this case.

Henry complains that, because of her seniority date (the date on which she began working in the plant), she was unable to successfully bid a full-time position. Both seniority and bidding procedures are specifically addressed in the collective bargaining agreement.

## ARTICLE 8.

### Seniority

*Section 1.* Seniority shall be applied on a plant-wide basis as set forth herein, (except in the case [of] first bid), and shall be determined and measured by length of full-time continuous service with the plant.

## ARTICLE 9.

### Bidding Procedures

*Section 2.* The Company will, with just consideration, give preference to the employee having the greatest seniority in the department where the vacancy exists as limited by requirements set forth in Section 4, under Seniority.

*Section 4.* Only two (2) job openings will be posted for bid. The first job opening will be awarded within the department (outlined in Section 2 above) and the second job opening will be posted and awarded plant-wide, under the same considerations as Section 2 above. Any subsequent job opening created by successful bid will be filled by the Company, taking into consideration the factor in Section 4 under Article I.

*Section 5. Part–Time Employees.* Part-time employees shall be given preference by seniority over other part-times for full-time regular work when vacancies oc-

cur, provided such employees give notice to the Company that they are available for the full-time, regular employment.

Because Henry has alleged a breach of the terms of the collective bargaining agreement, and her claim requires a construction of the collective bargaining agreement, the claim is preempted by federal labor law and must be dismissed because Henry failed to exhaust the procedure through arbitration. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Redmond v. Dresser Indus., Inc.,* 734 F.2d 633 (11th Cir. 1984); *Tombrello v. USX Corp.,* 763 F.Supp. 541 (N.D.Ala.1991). Whether Henry's claim is characterized as a statutory Title VII claim or a breach of the Collective Bargaining Agreement, the grievance and arbitration procedure is her sole remedy for any claim related to events occurring after May 24, 1994.[14] The only allegations of unlawful conduct occurring prior to May 24, 1994, is the selection of Charles Lamb as Supervisor of Retail Stores. As discussed above, that claim is due to be dismissed because it was untimely filed.

As Henry testified on deposition, her breach of contract claim is based on the fact that she was allegedly promised a full-time position and that, because her seniority date changed when she accepted the utility position, she was unable to successfully bid on a full-time position.[15] The court finds that to the extent, if any, Henry has a state law breach of contract claim, that claim is subject to the provisions of a collective bargaining agreement and is, thus, preempted by federal labor law. Thus, the court further finds that

---

**14.** The Fourth Circuit, in *Austin,* distinguished the seemingly contrary Supreme Court decision in *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), noting that the *Gilmer* decision expressly rejected this earlier decision's generalized suspicion of arbitration. *Austin* at 880. The court went further, quoting, at length, from the Supreme Court's opinion in *Gilmer* where the Supreme Court itself distinguished the *Alexander* line of cases as not dealing with "the issue of the enforceability of agreements to arbitrate statutory claims." *Austin* at 882, n. 2 (quoting *Gilmer,* 500 U.S. at 35, 111 S.Ct. at 1656–57). The plaintiff in *Alexander* had only agreed to arbitrate contract claims. The

*Austin* court found that *Gilmer,* rather than *Alexander,* controls situations such as the present one where the plaintiff has agreed to arbitrate any claim—statutory or contract—"affecting the conduct or relationship between the parties." (Collective Bargaining Agreement, Exhibit B to Answer, Art. 12, § 1).

**15.** The weakness of this claim is demonstrated by the fact that Wright, whose seniority date is the same as Henry's—June 1, 1994—successfully bid on and now works in one of the highest paid positions in the bakery. Hall Affidavit.

Colonial Baking's motion for summary judgment as to Henry's claims of discrimination and breach of contract subsequent to May 24, 1994, is due to be granted.

### CONCLUSION

Based on the foregoing, the court finds that the defendants' motion for summary judgment is due to be granted and that the defendants' motion to strike is due to be denied as moot.

A judgment in accordance with this memorandum opinion will be entered separately.