**Thaddaus MUMFORD, Plaintiff,**

**v.**

**CSX TRANSPORTATION, a foreign corporation, Defendant.**

**No. 3:93CV00377.**

United States District Court,
M.D. North Carolina,
Rockingham Division.

Sept. 12, 1994.

MEMORANDUM OPINION

TILLEY, District Judge.

Defendants filed a motion for summary judgment in this Title VII, 42 U.S.C. § 1981, and state law case pursuant to Rule 56 of the Federal Rules of Civil Procedure. Because Plaintiff has established material facts in issue as to the discriminatory discharge and retaliatory discharge claims, Defendant's motion for summary judgment is DENIED.

I.

The facts, stated most favorably to Mr. Mumford, the nonmoving party, are as follows: Mumford is a black male who was hired by CSX or its predecessor on June 1, 1977. From August 14, 1986, Mumford filed four Title VII claims with the Equal Employment Opportunity Commission alleging racial discrimination. The last of these generated a lawsuit, Civil Action No. 3:91CV00409 (M.D.N.C.) (*Mumford I*) which was dismissed on CSX's motion for summary judgment on October 7, 1993.

On May 26, 1992, in a deposition for *Mumford I,* Plaintiff stated that he had decided after a previous suspension that CSX would not grant him time off work for personal business. To secure days off, Mumford testified, he began to report falsely to CSX that he was sick. Such behavior violated CSX's operating rules. Within ten days of the deposition, CSX, following the collective bargaining agreement which applies to Mumford's employment, began disciplinary proceedings against Mumford for the rule violations to which he had admitted during his deposition. After a hearing on July 9, 1992, Mumford was terminated on August 7, 1992.

Plaintiff compares his situation with that of R.E. Carlisle, a white employee of CSX. On September 4, 1992, Mr. Carlisle, in a deposition related to his personal injury suit against CSX, admitted to securing time off under false pretenses. CSX did not initiate disciplinary proceedings against Carlisle until after Mumford, in connection with this case, produced a copy of Carlisle's prior statements. Affidavit of Dannie Strickland, ¶ 4. Carlisle was discharged on May 26, 1994 for obtaining time off under false pretenses.[1]

Michael A. Sheely, Regan A. Miller, Charlotte, NC, for plaintiff.

Thomas A. Farr, Gretchen W. Ewalt, Catherine Ann Potter, Raleigh, NC, for defendant.

1. Mr. Carlisle had previously been terminated for a conviction of driving while impaired. This

Second Affidavit of Dannie Strickland (filed July 22, 1994), ¶ 6.

## II.

As a threshold issue, CSX asserts that the Court lacks subject matter jurisdiction over Mumford's federal and state law claims due to the application of the Railway Labor Act (RLA). The RLA requires arbitration for all disputes "concerning rates of pay, rules or working conditions" involving covered carriers such as Defendant–CSX. 45 U.S.C. § 151a. The National Railway Adjustment Board has exclusive jurisdiction over "disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." § 151a. Such disputes are referred to as "minor" disputes, as opposed to "major" disputes which involve the process of obtaining collective bargaining agreements. *See Hawaiian Airlines, Inc. v. Norris,* —— U.S. ——, ——, 114 S.Ct. 2239, 2244, 129 L.Ed.2d 203 (1994). Defendant's argument that this Court lacks jurisdiction over Mumford's claims depends on a finding that Plaintiff's claims under Title VII, 42 U.S.C. § 1981, and North Carolina law involve minor disputes. The Supreme Court recently addressed the scope of minor disputes under the RLA in *Hawaiian Airlines, Inc. v. Norris,* —— U.S. ——, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). The Court in *Hawaiian Airlines,* —— U.S. at ——, 114 S.Ct. at 2250, held that state law wrongful discharge claims are not pre-empted by the RLA, thus providing direct precedent for a finding that the district court's jurisdiction over Mumford's state law claims is not displaced by the RLA. Although the *Hawaiian Airlines* decision does not address the relationship between the RLA and federal civil rights claims, this Court is persuaded by its logic. Justice Blackmun writing for the Court concluded that the term "grievances" in the statute applies to issues involving the application or interpretation of a collective bargaining agreement. *Id.* at ——, 114 S.Ct. at 2245. The Court determined that the RLA does not pre-empt the enforcement of

state law rights which exist independent of the collective bargaining agreement. *Id.* at ——, 114 S.Ct. at 2246. The Court commented:

> Wholly apart from any provision of the CBA, petitioners had a state-law obligation not to fire respondent in violation of public policy or in retaliation for whistleblowing. The parties' obligation under the RLA to arbitrate disputes arising out of the application or interpretation of the CBA did not relieve petitioners of this duty.

Similarly in the case at hand, Defendant had an obligation to not violate the federal and state laws which are the basis of Plaintiff's claims. The Second Circuit has adopted similar reasoning and held that claims under the Rehabilitation Act are properly decided in the district court despite the RLA. *Bates v. Long Island R.R. Co.,* 997 F.2d 1028 (2nd Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). The Fifth Circuit criticized *Bates* and held that Title VII claims involved minor disputes which could not be heard by the district court. *Hirras v. Nat'l R.R. Passenger Corp.,* 10 F.3d 1142 (5th Cir.), *cert. granted, vacated,* and *remanded,* —— U.S. ——, 114 S.Ct. 2732, 129 L.Ed.2d 855 (1994). The Supreme Court vacated the judgment in *Hirras* and remanded for reconsideration in light of *Hawaiian Airlines.* This Court relies on the instruction by the Supreme Court to the Fifth Circuit and applies the scope of "minor dispute" established in *Hawaiian Airlines* to the case at bar. Although the RLA denies district courts of subject matter jurisdiction over claims involving application of and construction of collective bargaining agreements, it does not provide the exclusive forum for determination of Plaintiff's federal and state law rights to be free from discriminatory practices. Accordingly, the Court finds that subject matter jurisdiction over Plaintiff's claims is proper.

## III.

CSX has moved for summary judgment on each of Mumford's claims. Summary judgment is proper only if there is no

---

information came to CSX's attention as the result of a deposition in a prior Title VII case involving

an unrelated plaintiff. He had since been reinstated.

genuine issue as to any material fact. The moving party on a motion for summary judgment has the burden of pointing to deficiencies in the record as to matters upon which the opposing party has the burden of proof such that the opposing party cannot prove its claim or defense or of showing otherwise why, upon the undisputed facts in the record, the moving party is entitled to judgment as a matter of law. The party opposing the motion for summary judgment may not merely rest on its pleadings, but must provide evidence or point to evidence already in the record, properly authenticated pursuant to Rule 56(e), that would be sufficient to support a jury verdict in its favor. *See* Rule 56(e), Fed.R.Civ.P., *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986), *Herold v. Hajoca Corp.,* 864 F.2d 317 (4th Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989), *Orsi v. Kirkwood,* 999 F.2d 86 (4th Cir.1993).

 CSX first seeks summary judgment on Mumford's claims of discriminatory discharge based on his race under Title VII and 42 U.S.C. § 1981. The elements of the two claims are identical. *See St. Mary's Honor Center v. Hicks,* —— U.S. ——, —— n. 1, 113 S.Ct. 2742, 2746 n. 1, 125 L.Ed.2d 407 (1993) (citing *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989)); *Anderson v. Douglas & Lomason Co.,* 26 F.3d 1277, 1284 n. 7 (5th Cir.1994). To establish a *prima facie* case of discriminatory discharge under Title VII and § 1981, the plaintiff must establish: (1) that he is a member of a protected class; (2) that the prohibited conduct in which he engaged was comparable in seriousness to the misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against the Plaintiff were more severe than those enforced against those other employees. *Cook v. CSX Transp. Corp.,* 988 F.2d 507 (4th Cir.1993). If the Plaintiff proves a *prima facie* case, the burden shifts to the employer who must then articulate a non-discriminatory reason for the difference in the discipline administered. *Cook,* 988 F.2d at 511. The Plaintiff then has the burden of demonstrating that the employer's reason is a pretext for discrimination. *Id.*

 Mumford has established a *prima facie* case. Mumford, who is black, has pointed to Carlisle as a similarly situated white employee who engaged in the same type of misconduct. Carlisle admitted in a deposition that he had obtained time off under false pretenses. Carlisle, however, was not terminated until after Mumford brought the instant suit and raised in a deposition that Carlisle had not been disciplined for similar misconduct.

 In response to Mumford's statement of a prima facie case and as a legitimate, nondiscriminatory reason for the difference in treatment between Mumford and Carlisle, CSX asserts that its attorneys at the Carlisle deposition did not have authority to initiate disciplinary proceedings against Carlisle and that the proper persons to initiate discipline did not learn of Carlisle's misconduct until Mumford produced a copy of Carlisle's deposition. Although CSX has asserted it was not aware of Carlisle's misbehavior, Carlisle's statements were made in the context of litigation against CSX and at least for the purposes of that action, the attorneys involved in the deposition were agents of CSX. This, without more, allows an inference that CSX was in fact aware of the behavior before Mumford pointed out Carlisle's behavior. Therefore, an issue as to when CSX learned of Carlisle's false statement and thus, whether CSX disciplined Mumford more severely than it did Carlisle exists for the jury.

## IV.

 Second, CSX seeks summary judgment on Mumford's retaliatory discharge claims under Title VII and § 1981. For the reasons stated above, the Court will apply the same standards to both the Title VII and § 1981 claims. To survive summary judgment a plaintiff must first establish a *prima facie* case of retaliatory discharge. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985). *Ross* sets out the required elements: 1) the employee engaged in protected activity; 2) the employer took adverse action against the employee; and 3)

a causal connection existed between the protected activity and the adverse action. *Id.* After the Plaintiff establishes a *prima facie* case of retaliatory discharge, the employer has the burden of establishing a legitimate nondiscriminatory reason for the termination. *Id.* at 365. The burden then shifts to the plaintiff to establish that the employer's reason is a pretext. *Id.*

It is undisputed that Mumford's deposition testimony was given in connection with a prior Title VII case, a protected activity, and that he was terminated from employment. Mumford may establish a causal connection by showing circumstances "that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Strickland v. MICA Info. Sys.,* 800 F.Supp. 1320, 1323 (M.D.N.C.1992) (citation omitted). The Court finds several facts which support an inference of a causal connection. First, the protected activity and the disciplinary proceedings were located in close temporal proximity to one another. Mumford gave the deposition in *Mumford I* in May, 1992; the formal investigation hearing was held July, 1992; Mumford was terminated October 1992; and CSX's summary judgment motion for *Mumford I* was granted in October, 1993. *See Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1314–15 (7th Cir.1989) (relying on temporal sequence to demonstrate a causal connection). Second, CSX's actions with regard to Carlisle support an inference that employees are not normally disciplined for admissions in depositions and that Mumford was singled out for his extensive history of complaints and charges against CSX. Mumford has established a *prima facie* case of retaliatory discharge.

CSX asserts that Mumford was fired for obtaining time off under false pretenses. Mumford in turn attacks this otherwise legitimate and nondiscriminatory reason as pretextual. Mumford points to the delayed dismissal of Carlisle as evidence that employees were not normally dismissed for similar violations where the violations came to light as a result of an admission in a deposition. Viewing this evidence in a light most favorable to Mumford, the Court finds that a reasonable fact finder could infer that the violation was only a pretext for discharging Mumford. Summary judgment on the retaliatory discharge claims, is therefore, improper.

## V.

Third, CSX seeks summary judgment on Mumford's state law claims. Count five of Mumford's complaint alleges wrongful termination in violation of N.C.Gen.Stat. § 143–422.2 while count 6, in the alternative, alleges wrongful termination in violation of the public policy of North Carolina which is stated in N.C.Gen.Stat. § 143–422.2. Pl.'s Compl. ¶¶ 47–59. The Court sees no distinction in the two claims and will address them as one.

North Carolina law provides an exception to the at-will employment doctrine for discharges in violation of North Carolina public policy. *Amos v. Oakdale Knitting Co.,* 331 N.C. 348, 350, 353, 416 S.E.2d 166, 168, 169 (1992). North Carolina General Statute § 143–422.2 states that the public policy of North Carolina is to protect all persons from discriminatory employment practices. Mumford has alleged that he was discriminated against because he is black, and thus he falls within the protection of the statute. North Carolina law relies on federal authority to establish the standards applicable to state law wrongful discharge claims. *North Carolina Dep't of Correction v. Gibson,* 308 N.C. 131, 141, 301 S.E.2d 78, 82 (1983); *see also Phillips v. J.P. Stevens & Co.,* 827 F.Supp. 349, 353 (M.D.N.C.1993). Since, as discussed above, Mumford has established that material issues of fact exist with regard to his Title VII and § 1981 claims, he has also established that such issues remain on his claim of wrongful discharge in violation of North Carolina public policy. Summary judgment on this claim is, therefore, inappropriate.

### ORDER

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith,

IT IS ORDERED that the defendant's motion for summary judgment be, and hereby is, DISMISSED.