**Ronald E. ROE, Plaintiff,**

v.

**David ANTLE, Linda Davis, Charles Gonzales, Tim Fleming, Jimmie Butt and Matthew Snow in their individual and official capacities, and Miner's Colfax Medical Center, Defendants.**

**No. CIV 96–392 BB/WWD.**

United States District Court,
D. New Mexico.

April 1, 1997.

---

Susan Morrison, Albquerque, NM, for Plaintiff.

Randolph B. Felker, Paul R. Ritzma, Santa Fe, NM, for Defendants.

### MEMORANDUM OPINION

BLACK, District Judge.

THIS MATTER comes before the Court on Defendants' February 19, 1997 motion for summary judgment (Doc. 42). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Defendants' motion should be GRANTED IN PART and DENIED IN PART.

## I. Facts and Procedural History

Defendant Miners' Colfax Medical Center ("Miners"), a state institution, employed Plaintiff Ronald E. Roe as manager of Miners' Cardiopulmonary Department from 1990 to 1995. At all relevant times, Defendant David Antle was Miners' chief executive officer, and Defendants Linda Davis, Charles Gonzales, Tim Fleming, Jimmie Butt, and Matthew Snow were members of Miners' Board of Trustees ("Board").

Plaintiff's employment difficulties began on April 8, 1993, when Plaintiff engaged in a physical altercation with Dr. Dale Mosdell, a physician at Miners, on hospital grounds and during work hours. According to Plaintiff, he struck Dr. Mosdell because the physician had sexually harassed Plaintiff's wife, a nurse at Miners.[1] Plaintiff claims that on the occasion of the altercation, Dr. Mosdell made a "nasty" remark and approached him, without making any gesture indicative of physical violence. In response, Plaintiff hit Dr. Mosdell twice in the head, and Dr. Mosdell fell to the ground. Plaintiff then kicked Dr. Mosdell at least once. Plaintiff contends that he kicked Dr. Mosdell to determine whether Dr. Mosdell was "playing possum." (Defs.' Mot. Summ. J. Ex. M, Dep. Roe at 258.)

Defendant Antle placed Plaintiff on ten days' administrative leave as a result of the altercation. Soon thereafter, Plaintiff disputed whether Defendant Antle properly refused to compensate him for certain duties he allegedly performed while on administrative leave. In addition, Plaintiff challenged the legitimacy of the suspension. Plaintiff's challenge appears to have been rejected at a hearing on May 5, 1993, however. Plaintiff appealed this rejection to an administrative law judge in June 1993, stating that his "actions [towards Dr. Mosdell] were privileged by [his] right to defend [his] wife and family." (Defs.' Mot. Summ. J. Ex. H.) The record does not indicate how this appeal was resolved.

In the following months, Plaintiff sent letters and memoranda to Defendants Antle, Davis, Fleming, and Butt, claiming that Defendants had failed to take action on Plaintiff's wife's allegations against Dr. Mosdell. Plaintiff also objected to various actions of Defendant Antle, which Plaintiff characterized as unwarranted and retaliatory interference with Plaintiff's work. *Inter alia*, Plaintiff complained of Defendant Antle's involvement in the cancellation of pulmonary clinics, Plaintiff's attendance at professional conferences, the payment of dues for membership in a professional organization, the drafting of federal grant applications, and the hiring of personnel in Plaintiff's department.

Further controversy between Plaintiff and Defendant Antle arose in January 1994, when Plaintiff purchased a nonrefundable plane ticket for work-related purposes. After his flight was canceled, Plaintiff sought reimbursement for his ticket from Defendant Antle. Before reimbursing Plaintiff, however, Defendant Antle attempted to ensure that if Plaintiff later received reimbursement from a party other than Miners, Plaintiff would forward this reimbursement to Miners. Plaintiff contends that Defendant Antle's conduct in this regard was "demeaning and harassing." (Pl.'s Am. Resp. Defs.' Mot. Summ. J. Ex. 2–12E.) Defendants allege that Plaintiff confronted Defendants Antle and Butt regarding the ticket in a hostile manner, causing Defendants Antle and Butt to feel physically threatened. Plaintiff admits that he spoke to Defendants Antle and Butt about the ticket, but denies that his behavior during these conversations was hostile. Miners reimbursed Plaintiff for his plane ticket on February 25, 1994.

The two performance appraisals that Defendant Antle provided to Plaintiff in June 1994 were also controversial. In these appraisals, Defendant Antle concluded that although Plaintiff's technical skills were good, his management skills were relatively poor. Plaintiff protested in September 1994 that these evaluations were unfair. According to Plaintiff, the June 1994 evaluations caused him to be denied merit raises.

---

**1.** Plaintiff claims that he formally complained of Dr. Mosdell's alleged sexual harassment of his wife, although he does not specify when, to whom, or in what manner he made this complaint.

In letters he wrote letters to Board members and to Governor Johnson in March, April, and May 1995, and March 1996, Plaintiff complained of Defendant Antle's management of Miners, and again referred to Plaintiff's personal disputes with Defendant Antle. In addition, Plaintiff's March 1996 letter to Governor Johnson discussed several other situations that Plaintiff perceived as mismanagement at Miners. Defendant Antle provided Plaintiff with a third performance appraisal on June 13, 1995, in which Defendant Antle concluded that Plaintiff's "deficiencies far outweigh[ed] his strengths." (Pl.'s Am. Resp. Defs.' Mot. Summ. J. Ex. C.) In particular, Defendant Antle noted Plaintiff's refusal to submit to Defendant Antle's authority.

On July 18, 1995, Defendant Antle notified Plaintiff that he was to be terminated because of his insubordination, that he could examine the evidence supporting his termination, and that he could respond to the reasons for the termination within seven days. Defendant Antle formally terminated Plaintiff on July 26, 1995. The notice of termination informed Plaintiff that he could appeal to the State Personnel Board within thirty days. It appears that Plaintiff filed an appeal, but later voluntarily dismissed it, claiming that he could not afford to pursue it.

Plaintiff filed complaints with the United States Equal Employment Opportunity Commission ("EEOC") on or about November 21, 1994, July 17, 1995, and August 1, 1995. In his first EEOC complaint, Plaintiff alleged that Defendant Antle retaliated against him because of his wife's sexual harassment charges against Dr. Mosdell. Specifically, Plaintiff alleged that Defendant Antle threatened to fire him, delayed reimbursing him for a plane ticket, refused to authorize travel expenses, prepared two derogatory evaluations, and denied Plaintiff a merit raise. In his second EEOC complaint, Plaintiff alleged that Defendant Antle denied Plaintiff another merit raise in retaliation for Plaintiff's previous EEOC complaint. In his third EEOC complaint, Plaintiff alleged that Defendant Antle terminated Plaintiff in retaliation for Plaintiff's two previous EEOC complaints. Plaintiff filed the present action in this Court on March 22, 1996, alleging that Defendants'

actions violated Plaintiff's rights under Title VII, the First Amendment, and the due process clause of the Fourteenth Amendment. On May 3, 1996, the EEOC issued Plaintiff a right to sue letter. Defendants filed a motion for summary judgment on February 19, 1997, and this motion is now before the Court.

## II. Analysis

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit–Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir.1995) (quoting Fed. R.Civ.P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.*

For issues on which the non-movant will bear the burden of proof at trial, the movant simply may show—point out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993) (quotation omitted). If the movant carries this initial burden, "responsibility then devolves upon the non-movant to show the existence of a genuine issue as to [a] material fact." *Id.* On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir.1995). The Court will consider Defendants' motion

for summary judgment in light of these standards.

### A. Plaintiff's Title VII Claims

In their February 19, 1997 motion for summary judgment, Defendants argue that the Court should grant Defendants judgment on Plaintiff's Title VII claims because Plaintiff has failed to present sufficient evidence of prohibited retaliation. The United States Supreme Court provided an analytical framework in which to consider these claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[2] *See also Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). First, a plaintiff must establish a *prima facie* case of prohibited retaliation. *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir.1996). To establish a *prima facie* case of retaliation, a plaintiff must show that "(1) she engaged in a protected activity ...; (2) she suffered a material adverse employment action subsequent to her participation; and (3) there exists a causal connection between the adverse employment action and her participation in protected activity." *Smart v. Ball State Univ.*, 89 F.3d 437, 440 (7th Cir.1996).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the adverse employment decision. *Burdine*, 450 U.S. at 252–54, 101 S.Ct. at 1093–94; *Randle*, 69 F.3d at 451. If the defendant proffers such a legitimate business reason, it successfully rebuts the presumption of retaliation raised by the plaintiff's

prima facie case. *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094–95; *Randle*, 69 F.3d at 453. The plaintiff must then prove retaliatory intent, either through direct evidence, or by proving that the reasons the defendant offered are not the true reasons for the defendant's action, but are merely a pretext for retaliation. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *Randle*, 69 F.3d at 451; *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 529 (10th Cir.1994).

### 1. Prima Facie Case

The Court must first consider whether Plaintiff has established a *prima facie* case with respect to his retaliation claims. The first element that a plaintiff must show to establish a *prima facie* retaliation case is that the plaintiff engaged in protected activity. *Smart*, 89 F.3d at 440. The parties appear to agree that Plaintiff engaged in protected activity when he complained that Dr. Mosdell was sexually harassing his wife in May 1993,[3] and when he filed charges of discrimination with the EEOC in November 1994, July 1995, and August 1995. Thus, Plaintiff has satisfied the first element of his *prima facie* retaliation claims.

The second element of a *prima facie* retaliation case requires that Plaintiff show an adverse employment action. *Id.* Defendants do not dispute that Plaintiff suffered material adverse employment actions when Defendants denied him merit raises in 1994, and when Defendants terminated his employment in July 1995. Thus, Plaintiff has also satisfied the second element of his *prima facie* retaliation claims.

However, Defendants do dispute whether Plaintiff has satisfied the third element of his

---

**2.** A Title VII plaintiff need not rely on the *McDonnell Douglas* framework if he can directly prove intentional retaliation. *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir.1996). However, Plaintiff has presented no such evidence in this case.

**3.** It is unclear whether Plaintiff attempts to argue that his altercation with Dr. Mosdell was also a protected activity. Nevertheless, this form of opposition to Dr. Mosdell's alleged sexual harassment of Plaintiff's wife far exceeds the scope of activity that Title VII protects. *See Jennings v.*

*Tinley Park Community Consol. Sch. Dist. No. 146*, 864 F.2d 1368, 1375 (7th Cir.1988) ("[W]here an employee engaged in opposition to a perceived unlawful employment practice participates in conduct which ... merely hinders another person's ability to perform his job, that employee relinquishes statutory protection."); *Hochstadt v. Worcester Fdn. for Experimental Biology*, 545 F.2d 222, 233 (1st Cir.1976) ("[The plaintiff's] actions went beyond the scope of protected opposition because they damaged the basic goals and interests of [the employer].").

*prima facie* case with respect to his retaliation claims, *i.e.,* whether a causal connection exists between Plaintiff's protected activity and Defendants' adverse employment actions. *Smart,* 89 F.3d at 440. "[A] retaliatory motive can be inferred from the fact that an adverse employment action follows charges by an employee against his/her employer. Such an inference can only be made, however, where 'close temporal proximity' exists between the bringing of charges and the subsequent adverse action." *Candelaria v. EG & G Energy Measurements, Inc.,* 33 F.3d 1259, 1261–62 (10th Cir.1994); *see also Burrus v. United Tel. Co.,* 683 F.2d 339, 343 (10th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982) ("[C]ausal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.").

In the present matter. Defendants argue that Plaintiff's termination occurred too long after Plaintiff s protected activity to support an inference of retaliatory motive. Specifically, they observe that Plaintiff first complained about Dr. Mosdell's alleged sexual harassment in May 1993, while Plaintiff was not terminated until July 1995. Defendants' argument, however, is flawed in two respects. First, the Court notes that Plaintiff filed a complaint of retaliation with the EEOC oil July 17, 1995, and was terminated on July 26, 1995. The temporal proximity between these two events amply supports an inference of causal connection. *See Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 731–33 (9th Cir. 1986) (two-month time span between protected activity and discharge permits inference of causal connection); *Mumford v. CSX Transp.,* 878 F.Supp. 827, 832 (M.D.N.C. 1994), *aff'd,* 57 F.3d 1066 (4th Cir.1995) (three-month time span between protected activity and discharge permits inference of causal connection); *cf. McKenzie v. Illinois Dep't of Transp.,* 92 F.3d 473, 484–85 (7th Cir.1996) (eleven-month time span between protected activity and adverse employment action failed to raise inference of causal con-

nection). Second, Plaintiff has submitted evidence that his complaints of discrimination and retaliation, and Defendants' adverse employment actions, both occurred regularly from May 1993 to July 1995, generally within a few months of one another.[4] Again, this temporal proximity supports an inference of causal connection. The Court therefore concludes that Plaintiff has established the third and final element of his *prima facie* retaliation claims.

## 2. Legitimate Nondiscriminatory Business Reasons

The Court must next consider whether Defendants have offered legitimate, nondiscriminatory business reasons for the adverse employment actions that Plaintiff suffered. *Burdine,* 450 U.S. at 252–54, 101 S.Ct. at 1093–94. "[T]he defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *EEOC v. Flasher Co.,* 986 F.2d 1312, 1316 (10th Cir.1992) (citations omitted). *See also Cone,* 14 F.3d at 530 ("We need not decide that the hospital's proffered reason ... is credible or sufficient. The employer's burden is simply to demonstrate a legitimate, nondiscriminatory reason for its actions.").

Defendants have produced evidence tending to show that Defendant Antle terminated Plaintiff's employment because Plaintiff refused to submit to Defendant Antle's authority as Miners' chief executive officer, and because he behaved with unrepentant hostility toward Dr. Mosdell, Defendant Antle, and Defendant Butt. (*See, e.g.,* Defs.' Mot. Summ. J. Ex. G (memorandum from Plaintiff to Defendant Antle stating that an earlier memorandum from Defendant Antle was "a blatant attempt to cover your ass"); Ex. J (memorandum from Plaintiff to Defendant Antle stating that Defendant Antle's desire to be involved in hiring a hospital employee was "inappropriate," unwanted, and unnecessary); Ex. A, Aff. Antle ¶¶ 4, 6 (Defendant

---

4. For example, in March and April 1995, Plaintiff wrote letters to Defendant Butt and Governor Johnson in which he alleged that Defendant Antle was retaliating against him because of the sexual harassment charges he had made on be-

half of his wife. Then, in early June 1995, Defendant Antle provided Plaintiff with an annual performance evaluation that was significantly more negative than the evaluations he had provided the previous year.

Antle's testimony that Plaintiff individually confronted Defendant Antle and Defendant Butt in a hostile manner and caused them to feel physically threatened; Plaintiff showed no regret for his attack on Dr. Mosdell).) Based on this evidence, the Court concludes that Defendants have proffered legitimate and nondiscriminatory reasons for the adverse employment actions taken against Plaintiff.

### 3. Pretext for Retaliation

■ Notwithstanding Defendants' legitimate nondiscriminatory explanations for the adverse employment actions taken against Plaintiff, Plaintiff may prove his retaliation claims by presenting evidence that Defendants' proffered reasons are not the true reasons for their actions, but are merely a pretext for retaliation. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. Plaintiff offers evidence that Defendant Antle's assertions of authority after April 1993, to which Plaintiff objected, constituted unprecedented and unnecessary micro-management. (*See, e.g.,* Pl.'s Am. Resp. Defs.' Mot. Summ. J. Ex. 2–1 11b (memorandum from Plaintiff to Defendant Antle regarding Defendant Antle's cancellation of pulmonary clinics, stating that "I have always scheduled the pulmonary clinics at this hospital ... You have never before questioned my ability to set these clinic dates"); Ex. 13, Dep. Snow (testimony of Board member that at Board meeting, "there was a feeling that [Defendant Antle] might be micro managing").)

Plaintiff also offers evidence that, with the significant exception of his altercation with Dr. Mosdell, his conduct toward the Board and staff at Miners was not hostile[5] (*See, e.g.,* Pl.'s Am. Resp. Defs.' Mot. Summ. J. Ex. 1, Dep. Roe at 149–51 (Plaintiff's testimony that he spoke to Defendant Butt in normal tones on occasion of alleged confrontation); Ex. 3, Aff. James (Miners physician's testimony that Plaintiff was "not short-tempered, even in difficult situations"); Ex. 16, Aff. Conklin (witness's testimony that Defendant Antle, rather than Plaintiff, behaved with hostility on occasion of alleged confrontation).) Finally, Plaintiff offers evidence that he was performing his job in a satisfactory manner at the time of his termination. (Pl.'s Am. Resp. Defs.' Mot. Summ. J. Ex. 3, Aff. James (Miners physician's testimony that Plaintiff was a good manager); Ex. 8, Aff. O'Hara (Miners employee's testimony that "starting in April 1993," patient care and morale in Plaintiff's department were "generally very good").) For these reasons, the Court concludes that Plaintiff has offered sufficient evidence of pretext to survive Defendants' motion for summary judgment on his Title VII claims. The Court will therefore deny Defendants' motion as to these claims.

### B. Plaintiff's First Amendment Claims

■ "[A] governmental entity cannot condition employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Schalk v. Gallemore,* 906 F.2d 491, 494 (10th Cir.1990). In analyzing claims based on this prohibition,

> [f]irst, the court must decide whether the speech at issue touches on a matter of public concern. If it does, the court must balance the interest of the employee in making the statement against the employer's interest in promoting the efficiency of the public services it performs through its employees. Third, if the preceding prerequisites are met, the speech is protected and plaintiff must show [his] expression was a motivating factor in the detrimental employment decision. Finally, if the plaintiff sustains this burden, the employer can still prevail if it shows by a preponderance of the evidence that it would have made the same decision regardless of the protected speech.

*Id.* (citations and internal quotations omitted).

The Court must first consider Defendants' argument that Plaintiff's speech did not touch on a matter of public concern. This issue is a question of law for the Court to

---

**5.** Furthermore, to the extent that Defendants claim that they terminated Plaintiff because of his altercation with Dr. Mosdell, too much time passed between the April 1993 altercation and Plaintiff's July 1995 termination for this explanation, standing alone, to be entirely credible.

decide, and is therefore appropriate for summary judgment. *Conaway v. Smith,* 853 F.2d 789, 796 n. 8 (10th Cir.1988). "Speech involves a matter of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community." *Withiam v. Baptist Health Care,* 98 F.3d 581, 583 (10th Cir.1996) (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1983)). Nevertheless,

> [i]t is not enough that the subject matter be of public concern; the content of the expression must also be of public concern.... General public interest is not the equivalent of public concern for First Amendment purposes. To be protected, the expression must sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government.

*Id.* (citations omitted).

The federal courts have developed two categories of employee speech to determine whether such speech is protected. "When the content of the speech focuses on disclosing public officials' malfeasance or wrongdoing, it is likely to be considered a matter of public concern." *Schalk,* 906 F.2d at 495. In contrast, "speech is generally not protected if the aim is simply to air grievances of a purely personal nature." *Id.* The Tenth Circuit has emphasized that "[i]n drawing the thin line between a public employee's speech which touches on matters of public concern, and speech from the same employee which only deals with personal employment matters, we have looked to the subjective intent of the speaker." *Id.; see also McEvoy v. Shoemaker,* 882 F.2d 463, 466 (10th Cir.1989) ("[I]n analyzing whether speech constitutes a matter of public concern, the focus is on the motive of the speaker, *i.e.,* whether the speech was calculated to disclose misconduct or dealt with only personal disputes.").

In the present matter, the Court concludes as a matter of law that the majority of Plaintiff's speech did not touch on matters of public concern. Plaintiff has filed with the Court numerous memoranda and letters that

Plaintiff wrote regarding his difficulties at Miners. With one exception, all of these memoranda and letters concern Plaintiff's ongoing personal conflict with Defendant Antle. For example, in his April 27, 1993 memorandum to Defendant Antle, Plaintiff objected to Defendant Antle's refusal to pay Plaintiff for certain work Plaintiff performed while on administrative leave. (Pl.'s Am. Resp. Defs.' Mot. Summ. J. Ex. 2–11A.) Likewise, in his May 18, 1993 memorandum to Defendant Antle, Plaintiff protested against Defendant Antle's intervention in Plaintiff's decisions whether or not to cancel pulmonary clinics at Miners. (Pl.'s Am. Resp. Defs.' Mot. Summ. J. Ex. 2–11B.) Particularly informative is Plaintiff's statement in this memorandum that he "would like to add this to the growing pile of complaints and grievances that I have against you." (*Id.; see also* Pl.'s Am. Resp. Defs.' Mot. Summ. J. Ex. 2–11E ("Your decision to deny this travel is motivated by your personal animosity towards me.").) Clearly, the aim of this speech was "to air grievances of a purely personal nature," and thus, the speech is not protected. *Schalk,* 906 F.2d at 495.

Plaintiff contends that his memoranda nevertheless contain protected speech because many of them discussed Dr. Mosdell's alleged sexual harassment of Plaintiff's wife and "other women" at Miners. Speech concerning systemic discrimination unquestionably touches on matters of public concern. *Patrick v. Miller,* 953 F.2d 1240, 1246–47 (10th Cir.1992). However, opposition to discrimination against oneself, because almost exclusively relating to a personal dispute, does not touch on matters of public concern.[6] *See id.* ("In the present case, [the plaintiff] was not addressing concerns relating to employment practices which affected him directly.... Contrary to defendants' assertion, [the plaintiff's] statements cannot be characterized simply as a personal grievance."); *see also Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 143 (2d Cir.1993) (hospital employee's complaints about sexual harass-

---

6. Although the First Amendment does not protect such speech, Title VII clearly does. 42 U.S.C. § 2000e–3 (1994).

**1530**

ment were "personal in nature and generally related to her own situation," and were not protected by the First Amendment), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994).

The evidence before the Court conclusively demonstrates that Plaintiff's speech concerned only the alleged sexual harassment of Plaintiff's wife. (*See, e.g.*, Pl.'s Am. Resp. Defs.' Mot. Summ. J. Ex. 2–11G; Ex. 4.) Plaintiff's opposition to discrimination against his wife was far more personal than an employee's disinterested opposition to discrimination against fellow employees. Plaintiff's opposition is more analogous to an employee's opposition to discrimination against himself, which the First Amendment does not protect. *Saulpaugh*, 4 F.3d at 143. Thus, the Court concludes that Plaintiff's speech opposing Dr. Mosdell's alleged sexual harassment of Plaintiff's wife did not touch on matters of public concern.

 Plaintiff's reliance on various letters that he sent to Defendant Antle, Defendant Butt, and Governor Johnson, is also unavailing. In his March 28, 1995 letter to Governor Johnson, Plaintiff stated that his personal grievances were "only a small part of the continuing mismanagement of Miners' ... by David Antle and the Board of Trustees of this facility." (Pl.'s Am. Resp. Defs.' Mot. Summ. J. Ex. 2–11G.) However, Plaintiff never specified what the "continuing mismanagement of Miners" was. Plaintiff's general accusation of mismanagement did ·not "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." *Withiam*, 98 F.3d at 583. Likewise, in his April 25, 1995 letter to Defendant Butt, Plaintiff discussed various disputes between Defendant Antle and himself, and wrote that his complaints were "only the tip of the iceberg where David Antle is concerned." (Pl.'s Am. Resp. Defs.' Mot. Summ. J. Ex. 2–1 1H.) Again, however, Plaintiff's allegations against Defendant Antle did not inform the public of anything substantive other than Plaintiff's personal grievances against his supervisor. Thus, these letters do not touch on matters of public concern

within the meaning of the First Amendment. *Withiam*, 98 F.3d at 583.

 As the Court noted *supra*, Plaintiff has produced evidence that one of his letters, specifically, his March 7, 1996 letter to Governor Johnson, may touch on matters of public concern. In this letter, Plaintiff claimed that Defendants Antle, Davis, and Gonzales had misappropriated travel funds, that Miners' employees had been required to advertise for Sunwest Bank while on duty, and that the Board's attorney had been improperly retained. (Pl.'s Am. Resp. Defs.' Mot. Summ. J. Ex. 2–11I.) Unlike the remainder of Plaintiff's speech, this letter attempts to "disclos[e] public officials' malfeasance or wrongdoing," *Schalk*, 906 F.2d at 495, and is sufficiently specific as "to be helpful to the public in evaluating the conduct of government." *Withiam*, 98 F.3d at 583. Further, this letter goes beyond Plaintiff's. personal disputes with Defendant Antle. Thus, Plaintiff's motive in writing the letter may well have been to disclose potential wrongdoing at Miners, rather than to air his grievances with Defendant Antle. *Schalk*, 906 F.2d at. 495.

Nevertheless, this letter cannot form the basis of Plaintiff's First Amendment claims. As stated *supra*, to establish a First Amendment retaliation claim, a "plaintiff must show [his] expression was a motivating factor in the detrimental employment decision" at issue. *Id.* at 494. As a matter of law, Plaintiff cannot meet this burden. Specifically, Plaintiff cannot show that a letter he wrote on March 7, 1996. was a motivating factor in any of Miners' employment decisions regarding Plaintiff, because Miners discharged Plaintiff on July 26, 1995, several months before he wrote the letter. In conclusion, because Plaintiff's speech did not touch on matters of public concern, and because the single letter which may have touched on matters of public concern could not have been a motivating factor in any adverse employment decision against Plaintiff, the Court will grant Defendants' motion for summary judgment on Plaintiff's First Amendment retaliation claims.[7]

---

**7.** Because the Court will grant Defendants summary judgment on Plaintiff's First Amendment claims on this basis, the Court need not consider Defendants' argument that the individual Defen-

## C. Plaintiff's Substantive Due Process Claims

In opposition to Plaintiff's substantive due process claims, Defendants argue that substantive due process does not protect Plaintiff's alleged property interest in his employment with Miners. The due process clause of the Fourteenth Amendment provides that a state may not "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV. "Although the phrase 'due process' connotes a right to a fair hearing, the Supreme Court has recognized that the clause contains a substantive component as well." *Archuleta v. Colorado Dep't of Institutions,* 936 F.2d 483, 489 (10th Cir.1991).

> The substantive component of the Due Process Clause protects those rights that are fundamental, that is, rights that are implicit in the concept of ordered liberty ... A finding that a right merits substantive due process protection means that the right is protected against certain government actions regardless of the fairness of the procedures used to implement them.

*McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir.1994) (en banc) (quotations omitted).

Neither the Supreme Court nor the Tenth Circuit has decided whether substantive due process protects a public employee's property interest in his employment. *Archuleta,* 936 F.2d at 489 n. 6 ("For purposes of this opinion, we assume, without holding, that the plaintiff's property interest [in her employment] is entitled to the protection of substantive due process ... [I]t is not clear what interest is required to trigger substantive due process guarantees ... [T]he Supreme Court has not expressly determined whether all property is entitled to such protection."). However, several other Circuits have considered this issue, with varying results. *Compare McKinney,* 20 F.3d at 1556–60 (holding that substantive due process does not protect an individual's property interest in public employment), *Sutton v. Cleveland Bd. of*

*Educ.,* 958 F.2d 1339, 1350–51 (6th Cir.1992) (same), *and Brown v. Brienen,* 722 F.2d 360, 366–67 (7th Cir.1983) (holding that substantive due process does not protect a public employee's contract right to overtime compensation) *with Harrington v. Harris,* 108 F.3d 598, 606–07 (5th Cir. Mar.14, 1997) (holding that substantive due process does protect an individual's property interest in public employment),[8] *Newman v. Massachusetts,* 884 F.2d 19, 25 (1st Cir.1989) (same), *Moore v. Warwick Pub. Sch. Dist. No. 29,* 794 F.2d 322, 328–29 (8th Cir.1986) (same), *and Gargiul v. Tompkins,* 704 F.2d 661, 668 (2d Cir.1983) (same), *vacated on other grounds,* 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984); *cf. Lum v. Jensen,* 876 F.2d 1385, 1389 (9th Cir.1989) (holding that in Ninth Circuit in 1984 there was "no clearly established constitutional right to substantive due process protection of continued employment"), *cert. denied,* 493 U.S. 1057, 110 S.Ct. 867, 107 L.Ed.2d 951 (1990).

The *McKinney* court's reasoning on this issue is instructive. The court first noted the Supreme Court's reluctance to extend substantive due process protection beyond fundamental constitutional rights. *McKinney,* 20 F.3d at 1556; *see also Sutton,* 958 F.2d at 1351. As the *McKinney* court observed, the Supreme Court

> has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.

*Collins v. City of Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). The court further relied on Justice Powell's concurring opinion that "areas in which substantive rights are created only by state law (as is the case with ... employment law) are not subject to substantive due process protection under the Due Process

---

dants are entitled to qualified immunity from these claims.

**8.** Nevertheless, the Fifth Circuit in *Schaper v. City of Huntsville,* 813 F.2d 709 (5th Cir.1987), held that substantive due process does not pro-

tect an individual's property interest in public employment where the individual has access to an adequate post-deprivation remedy. *Id.* at 718.

Clause because substantive due process rights are created only by the Constitution." *McKinney*, 20 F.3d at 1556 (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 515–16, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)); *see also Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir.1986) ("Rights of substantive due process are founded not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution."); *Migneault v. Peck*, Civ. 96–0385 JC, slip op. at 12 (D.N.M. filed Mar. 14, 1997) (Conway, C.J.) (same). Thus, "state law based rights constitutionally may be rescinded so long as the elements of procedural—not substantive—due process are observed." *McKinney*, 20 F.3d at 1556; *see also Sutton*, 958 F.2d at 1350 ("Most, if not all, state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process."); *Reich v. Beharry*, 883 F.2d 239, 244 (3d Cir.1989) ("[N]ot all property interests worthy of procedural due process protection are protected by the concept of substantive due process.").

Also critical to the *McKinney* court's reasoning is the distinction between legislative and executive acts. *McKinney*, 20 F.3d at 1557 n. 9.

> Executive acts characteristically apply to a limited number of persons (and often only to one person).... The most common examples are employment terminations.... Legislative acts, on the other hand, generally apply to a larger segment of—if not all of—society; laws and broad-ranging executive regulations are the most common examples.

*Id.*

As the *McKinney* court observed,

> the analysis ... that is appropriate for executive acts is inappropriate for legislative acts. For instance, only when addressing legislative acts has the Supreme Court mandated that states must demonstrate that they are violating private interests only as necessary to promote state interests. A similar balancing test is not found in executive act cases.

*Id.* (citations omitted). Thus, in cases involving executive acts such as pretextual dis-

charge, the courts need not attempt to balance private and state interests. *Id.; but see Moore*, 794 F.2d at 328–29 (applying legislative-act precedent to substantive due process claim involving executive act); *Pike v. Gallagher*, 829 F.Supp. 1254, 1278–80 (D.N.M. 1993) (Burciaga, C.J.) (same).

The *McKinney* court also observed that the Supreme Court has rejected substantive due process protection of a public employee's *liberty*, as opposed to *property*, interest in claims involving pretextual termination. 20 F.3d at 1559 (citing *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)); *see also Zorzi v. County of Putnam*, 30 F.3d 885, 895 (7th Cir.1994) ("Occupational liberty ... is not protected by substantive due process."). The *McKinney* court summarized the *Bishop* court's holding that "even if the ostensible reasons for [an employee's] termination [are] entirely false and pretextual, no Fourteenth Amendment claim [can] be raised" based on the employee's substantive due process liberty interests. *McKinney*, 20 F.3d at 1559 (citing *Bishop*, 426 U.S. at 349 & n. 13, 96 S.Ct. at 2080 & n. 13). In support of this holding, the *Bishop* Court observed that

> [t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause ... is not a guarantee against incorrect or ill-advised personnel decisions.

*Bishop*, 426 U.S. at 349–50, 96 S.Ct. at 2080.

Finally, the *McKinney* court relied on its conclusion that procedural due process remedies are more appropriate to pretextual discharge cases than are substantive due pro-

cess remedies. *McKinney*, 20 F.3d at 1560. As the *McKinney* court observed, "[i]n substantive due process cases, the claimant seeks compensatory damages for the value of the deprived right. In procedural due process cases, however, although the claimant may seek compensatory damages, the primary relief sought is equitable." *Id.* at 1557. The *McKinney* court reasoned that "the appropriate remedy for a pretextual termination is not damages calculated on the employee's potential earnings for the rest of his or her working life, but rather procedural, equitable remedies: reinstatement and a directive that proper procedures be used in any future termination proceedings." *Id.* at 1560.

The Court finds the reasoning of the *McKinney* court to be persuasive, and will join the Sixth, Seventh, and Eleventh Circuits in holding that "in non-legislative cases, only procedural due process claims are available to pretextually terminated employees." *McKinney*, 20 F.3d at 1560; *Sutton*, 958 F.2d at 1351; *Brown*, 722 F.2d at 366–67. Because the present matter involves only non-legislative acts, and because Plaintiff has asserted only substantive due process claims, the Court will grant Defendants summary judgment on Plaintiff's claims under the due process clause.[9]

## D. Plaintiff's Claims Against Individual Defendants

█ Finally, the Court will also grant Defendants summary judgment on Plaintiff's claims against the individual Defendants in their individual capacities. To the extent Plaintiff asserts claims against the individual Defendants arising out of the First Amendment and the substantive due process clause, the Court will grant the individual Defendants summary judgment on these claims for the reasons discussed *supra*. To the extent Plaintiff asserts claims against the individual Defendants under Title VII, the Tenth Circuit has clearly held that suits against per-

sons in their individual capacities are inappropriate under Title VII. *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir.1996). The Court will therefore grant the individual Defendants summary judgment as to Plaintiff's Title VII claims.

## III. Conclusion

The Court will grant in part and deny in part Defendants' February 19, 1997 motion for summary judgment. The Court will grant the motion with respect to Plaintiff's claims based on the First Amendment and substantive due process, as well as Plaintiff's Title VII claims against the individual Defendants in their individual capacities. However, the Court will deny Defendants' motion with respect to Plaintiff's remaining claims under Title VII.

An Order in accordance with this Memorandum Opinion will issue.

---

9. Because the Court will grant Defendants summary judgment on Plaintiff's substantive due process claims on this basis, the Court need not consider Defendants' argument that the individual Defendants are entitled to qualified immunity from these claims.

